United States District Court
Southern District of Texas

**ENTERED**

October 17, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MARY DIJKMAN, | § |
| | § |
| *Plaintiff,* | § |
| VS. | § CIVIL ACTION NO. 4:23-cv-01430 |
| | § |
| AMGUARD INSURANCE COMPANY, | § |
| | § |
| *Defendant.* | § |
| | § |
| | § |
| | § |

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before the Court is Defendant AmGuard Insurance Co.'s ("AmGuard") Motion for Partial Summary Judgment. (Doc. No. 16). Plaintiff Mary Dijkman ("Plaintiff") filed a Response Opposing Summary Judgment, (Doc. No. 18), and AmGuard replied. (Doc. No. 20). Considering the motions and applicable law, the Court hereby **GRANTS** AmGuard's Motion for Partial Summary Judgment. (Doc. No. 16).

### I.    Background

At issue in this Motion for Partial Summary Judgment are three provisions in Plaintiff's insurance policy: Coverage A ("Dwelling"), Coverage C ("Personal Property"), and Coverage D ("Loss of Use), which includes the Additional Living Expenses ("ALE") provision. Under Coverage A, Plaintiff acknowledges that policy benefits have been paid out entirely but, she contends, with unreasonable delay—violating both the policy itself and the Texas Insurance Code. Under Coverage C, the parties dispute whether certain items are covered and whether Plaintiff has been paid for other items. Under Coverage D, Plaintiff alleges that while the policy limits were paid, they were rendered insufficient by AmGuard's delay in paying under Coverage A.

In February 2021, a winter storm caused frozen pipes to burst in Plaintiff's Katy, Texas home. (Doc. No. 18 at 6). The ceiling collapsed, damaged Plaintiff's personal property, and made the home unlivable. (*Id.*). Plaintiff reported the loss to her insurer, AmGuard, that same day. (Doc. No. 18-4 at 12:7–10). Two days later, AmGuard requested photos of the damage, and any invoices or estimates. (Doc. No. 18-6). Defendant had an independent adjuster inspect the property, who noted significant damage and determined the home to be uninhabitable. (Doc. No. 18 at 7).

After filing her claim, and even though coverage was never disputed, AmGuard neither responded nor paid for temporary housing payments for several weeks. (Doc. No. 18-4 at 11). By March 2021, AmGuard began paying for a hotel with the ALE benefits, but it made no Dwelling Coverage payment for months and when a payment was finally made it was drastically below the estimate Plaintiff provided. Plaintiff alleges that despite having a reasonable estimate and no liability dispute, AmGuard unreasonably delayed payment.

Since Plaintiff and her family had to live in a hotel for over a year as they waited on the Dwelling Coverage payments, eventually Plaintiff's ALE benefits reached their limit in January 2022. Plaintiff was then forced to pay out of pocket for her living expenses while AmGuard allegedly continued to delay paying her the rest of her policy benefits. Finally, in April 2022, Plaintiff received a check for the remaining amount owed under the Dwelling Coverage, allowing her to repair her home and move her family back in.

Plaintiff acknowledges that any amounts owed under the Dwelling and Loss of Use coverages were paid in full. (Doc. No. 18 at 14). Nevertheless, Plaintiff filed this suit because she contends that AmGuard's delay in payment was not in compliance with the terms of the policy and caused further damages based on her out of pocket costs before the policy payments were made. First, Plaintiff alleges that AmGuard breached the policy when it failed to promptly pay the amount

owed under the policy's Dwelling Coverage provision. Second, Plaintiff alleges statutory violations under TEX. INS. CODE § 541.060(1), (2)(A), (3), (4), (5), & (7) for unfair settlement practices, and §§ 542.051–542.058 for failing to promptly pay the claims. Third, Plaintiff alleges that AmGuard violated its duty of good faith and fair dealing because it knew it owed the money yet refused to pay. Fourth, Plaintiff argues that AmGuard failed to pay for damage inflicted upon several items covered under the Personal Property Coverage provision. (Doc. No. 1-4 at 11–13).

In its Motion for Partial Summary Judgment, AmGuard makes two main arguments. First, Plaintiff's breach of contract, Texas Insurance Code, and good faith and fair dealing claims are precluded because AmGuard has entirely paid the amount owed under the Policy. As the Plaintiff cannot satisfy the independent-injury test, there is no fact issue as to whether Plaintiff can recover additional damages. Second, AmGuard argues that there is no evidence to suggest that Plaintiff's personal property suffered any actual damage. It provides photos that show several of the items— a desk chair and two wing-back chairs—and contends that they prove these pieces did not suffer water damage at the time and demonstrate that they are still in use today. Thus, AmGuard argues, summary judgment should be awarded against Plaintiff's contractual and statutory claims and this Court should also dispose of the personal property claims on those items.

Plaintiff makes several points in response. First, Plaintiff argues that AmGuard's one-year delay in payment of the policy benefits itself was a breach of the agreement. (Doc. 18 at 4). Second, she argues that the only reason that the ALE policy limits were reached is due to AmGuard's delay, and thus, AmGuard owes more than the original policy limits. Further, Plaintiff claims she has independent injuries—in particular, the extra costs incurred due to AmGuard's refusal to promptly pay her policy benefits. (Doc. No. 18 at 5). Finally, Plaintiff argues that AmGuard has never paid the amount owed under the personal property coverage. (Doc. No. 18 at 6).

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III.     Analysis

### a.  The Texas Insurance Code Claims

While Plaintiff provides some evidence to support her claims, AmGuard owes no duty to pay once it pays out the policy limits unless she qualifies under one of the two exceptions to that

general rule—at issue here are the independent-injury and benefits-lost rules. Plaintiff's Original Petition alleges violations of the Texas Insurance Code based on AmGuard's conduct after Plaintiff filed her claim. (Doc. No. 1-4 at 11–13). In a diversity case such as this, the Court must apply Texas law and is bound by the interpretation of that law put forth by Texas courts. The Supreme Court of Texas instructs that the Insurance Code serves to "supplement[] the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (citing TEX. INS. CODE § 541.060(a)). Section 541 generally prohibits insurers from engaging in a variety of "unfair settlement practices." TEX. INS. CODE § 541.060(a). Plaintiff specifically alleges that AmGuard violated § 541.060(a) in several ways: 1) misrepresenting a material fact or policy provision to the coverage at issue; 2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff' claim with respect to which Defendants liability has become reasonably clear; and 3) failing to promptly provide a reasonable explanation of the basis for the insurer's denial of a claim or settlement; 4) failing to affirm or deny coverage of a claim to a policyholder within a reasonable time; and 5) refusing to pay a claim without conducting a reasonable investigation with respect to the claim. (Doc. No. 1-4 at 11–12).

Plaintiff further alleges that AmGuard violated TEX. INS. CODE §§ 542.055–542.058, by: 1) failing to commence and investigation of the Claim and request from the plaintiff all items, statements, and forms that Defendant reasonably believed would be required; 2) failing to notify the plaintiff in writing of acceptance or rejection of the claim within the applicable time constraints; and 3) delaying payment of the claim following Defendant's receipt of all items,

statements, and forms reasonably requested and required, longer than the amount of time provided by statute. (Doc. No. 1-4 at 13).

    *i.    The Benefits-Lost Rule*

In Texas, the general rule is that an insurance company has no obligation to pay damages that exceed policy limits once those limits have been paid. The first exception relevant here is the Benefits-Lost Rule, which allows an insured plaintiff to recover benefits as actual damages "even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right." *Menchaca*, 545 S.W.3d at 497. This principle typically applies in the context of claims "alleging that an insurer misrepresented a policy's coverage, waived its right to deny coverage or is estopped from doing so, or committed a violation that caused the insured to lose a contractual right to benefits that it otherwise would have had." *Id.* Here, Plaintiff does not allege that she lost contractual rights due to the actions of AmGuard. In fact, Plaintiff is arguing that by not paying her the additional benefits she requests, AmGuard is failing to pay her what she *is* contractually owed. Thus, the Benefits-Lost rule is inapplicable here.[1]

    *ii.    The Independent-Injury Rule*

The second exception is when the statutory violation causes an independent injury. *Menchaca*, 545 S.W.3d at 500. "An insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500. Thus, for an insured Plaintiff "to recover damages for an insurer's violations of the Texas Insurance Code, the insured must prove either (1)

---

[1] Additionally, the Benefits-Lost Rule, its equivalent, or facts raising its application do not appear in Plaintiff's Original Petition and did not appear in any of her briefing until the Response to AmGuard's Motion for Partial Summary Judgment. As such, this theory of recovery is not properly before the Court. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("It is well settled in our circuit that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court").

6

a right to receive benefits under the policy; or (2) compliance with the independent-injury rule." *St. Luke's United Methodist Church v. Church Mut. Ins. Co.*, No. 2:20-cv-00053, 2022 WL 980352, at *7 (S.D. Tex. Mar. 31, 2022).

Here, Plaintiff does not bring statutory claims to recover the policy benefits she is entitled to because she acknowledges that all policy benefits—except for the disputed personal property claims—have been paid. Instead, she seeks damages in addition to the policy benefits for expenses that she alleges were caused by AmGuard's violation of the Texas Insurance Code. Applicable here, is the second prong of the independent-injury rule. The Fifth Circuit has clarified the rule "limits the recovery of *other* damages that "flow" or "stem" from a mere denial of policy benefits." *Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 903 F.3d 435 452 (5th Cir. 2018). Applying *Lyda*, the Fifth Circuit reiterated that in cases where a Plaintiff seeks damages based on *paid* policy benefits, the independent injury rule applies. *Navarra v. State Farm Lloyds*, No. 23-20582, 2024 WL 3174505, at *2 (5th Cir. June 25, 2024).

Attempting to satisfy the independent-injury rule, Plaintiff points to the out-of-pocket living costs that she was forced to pay after her ALE benefits were exhausted. She alleges that her ALE benefits would not have been exhausted, and she would not have had to pay the difference, if AmGuard had not waited over a year to pay out her Dwelling Coverage benefits without any challenge to coverage. Specifically, Plaintiff argues that AmGuard's "unreasonable delay was the very reason why Plaintiff's ALE limits were exhausted, resulting in her incurring additional out-of-pocket expenses for what would have otherwise been covered under the Policy. . . ." (Doc. No. 18 at 18). Stated another way, if AmGuard would have paid her Dwelling Coverage timely, Plaintiff could have afforded to repair her home sooner, been in a hotel less time, and she would not have had to pay the extra expenses she did after she exhausted her ALE coverage.

The damages supported by Plaintiff's evidence do seem predicated on AmGuard's alleged improper denial or delay of the policy benefits. Nevertheless, the alleged unreasonable delay in paying the benefits—the claimed statutory violation—is not an "independent" basis for damages as contemplated by the Supreme Court of Texas. *Menchaca*, 545 S.W.3d at 500 ("We have further limited the natural range of injury by insisting that an injury is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right.). In fact, AmGuard's delay in paying is also a basis for Plaintiff's breach of the insurance contract claim. If the same injury caused by the same conduct is the basis for both breach-of-contract and statutory claims, then the injury certainly "flows or stems from the denial of the claim for policy benefits." *Id.*; *see also In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 874 (Tex. 2021).

True, Plaintiff seeks the extra out-of-pocket costs with a claim based on what seems to be a statutory violation, not under the policy, but the costs directly stemmed from AmGuard's failure to pay the benefits that were owed. Once the benefits were paid, Texas law holds that the cause of action could no longer survive without a separate and independent injury. While the *claim* may be independent from any contractual dispute, the *injury* is not. *See In re State Farm*, 629 S.W.3d at 874. AmGuard's delay in paying the benefits may have violated §§ 541 and 542, but the injury is not "independent" of the contractual claim. *See Garza v. Allstate Fire & Cas. Ins. Co.*, 466 F. Supp. 3d 705, 720 (S.D. Tex. 2020) ("In order for a claim to he considered unrelated to and independent of the underlying policy claim, the injury pled by plaintiff . . . cannot flow or stem from the denial of the claim for policy benefits.").

Thus, these kinds of compensable injuries are few and far between. Even the Supreme Court of Texas seemingly recognized the narrow window imposed by this rule, stating that "although we reiterate our statement in *Stoker* that such a claim could exist, we have no occasion

8

to speculate what would constitute a recoverable independent injury." *Menchaca*, 545 S.W.3d at 500. The Court held that such a successful claim would be "rare, and [the Supreme Court of Texas] in fact had yet to encounter one." *Id.* at 499. As such, an injury stemming from the dilatory but eventual payment of all policy benefits is not an injury *independent* from the underlying policy claim.[2] As Plaintiff's statutory claims fail to establish her right to additional benefits under the Benefits-Lost or Independent-Injury rules, the Court **GRANTS** summary judgment for AmGuard on Plaintiff's Texas Insurance Code claims.

### b. The Contractual Claims[3]

Plaintiff's contractual claims come down to whether AmGuard paid the amount that it owed under the Loss of Use, Additional Living Expenses, and Personal Property coverage schedules. While the satisfaction of the Personal Property coverage is in dispute, Plaintiff stipulates that AmGuard paid the full policy amount under the Loss of Use, Dwelling, and ALE coverages. (Doc. No. 18 at 14, 13). Thus, there is no genuine issue of a material fact related to the breach of contract claims relating to the Additional Living Expenses and Loss of Use coverage. The Court therefore **GRANTS** summary judgment on the contractual claims relating to those policy benefits.

---

[2]     The Court recognizes that this framework arguably allows insurance companies to commit all sorts of statutory violations without consequences, so long as the policy benefits are paid in full *eventually*. This does not seem entirely fair to the insured. Moreover, it seems to undermine the purpose of the Insurance Code because, if insurance companies can violate the Texas Insurance Code without accountability, it renders the protections given to the insured illusory. Nevertheless, this Court is bound by how the Supreme Court of Texas and Fifth Circuit have defined this doctrine; if it were not, the Court might not reach the same result.

[3]     While Plaintiff's Original Complaint includes a breach of good faith and fair dealing cause of action, there are no arguments in her Response in Opposition to Partial Summary Judgment that relate to that cause of action, and she refers the Court to no summary judgment evidence on the matter. As such, the Court deems the claim to be waived. FED. R. CIV. PRO. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record."); *Criner v. Texas—New Mexico Power Co.*, 470 Fed. App'x 364, 367 (5th Cir. 2012).

### c.  The Personal Property Claims

Plaintiff argues that several pieces of insured personal property were damaged in the storm and the benefits were never paid out. AmGuard concedes that they were not paid for, but challenges that the unpaid personal items were ever damaged. Both parties submit photographic "evidence" that purports to establish that the personal items were, or were not, damaged. Plaintiff offers no affidavit or declaration that proves or explains any of the alleged damage—she only provides photographs. The Court's review of these images has revealed no such evidentiary value. In the images provided by the Plaintiff, there is no clear evidence of damage to the desk chair or wing-back chairs. Further, there are no images that Plaintiff points to that show the state of the pet water bowls at all, merely images of the water damage broadly in various rooms of the house.

While the non-movant may rely on the movant's evidence, in this instance AmGuard's evidence also does not raise a fact issue that the chairs were damaged or not damaged. Its evidence seems to show solely that the chairs are currently in use to some extent. This is insufficient to preclude any damage as a matter of law. Similarly, AmGuard argues that the pet water bowls could not have been subjected to water damage because they are "designed to hold water." While this argument is superficially clever, a burst pipe causing a ceiling collapse could certainly have broken a water bowl.

While AmGuard asserts there is no evidence that the chairs and bowls were damaged, Plaintiff fails to create a fact issue to establish that they were. Plaintiff points to no affidavit or deposition testimony to show that the pictures she provides actually contain the relevant chairs or bowls or how they are damaged. The Court's review of Plaintiff's photos may or may not reveal

any actual damage to chairs, and the Court does not see photos depicting bowls of any kind.[4] Blurry and cluttered photos showing damage to the home, without anything supporting that there is actual damage to the relevant items claimed, are insufficient to create a genuine issue of material fact. As such, the Court **GRANTS** summary judgment on the claim of damage to the desk chair, the wing-back chairs, and the pet water bowls. All other Coverage C claims remain.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** AmGuard's Motion for Partial Summary Judgment. (Doc. No. 10).

Signed this 17 day of October, 2024.

Andrew S. Hanen
United States District Judge

---

[4]    In Plaintiff's deposition, she maintains that there are personal items that were damaged but states only that she cannot list them. (Doc. No. 18-4, 18).

11